RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 13-5477

*v.*

FRANK DWAYNE RANDOLPH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cr-00082—Aleta Arthur Trauger, District Judge.

Argued: March 6, 2015

Decided and Filed: July 24, 2015

BEFORE: GRIFFIN and STRANCH, Circuit Judges; STEEH District Judge.[*]

_____

## COUNSEL

**ARGUED:** Donald F. Samuel, GARLAND, SAMUEL & LOEB, P.C., Atlanta, Georgia, for Appellant. David Lieberman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Donald F. Samuel, Amanda R. Clark-Palmer, GARLAND, SAMUEL & LOEB, P.C., Atlanta, Georgia, for Appellant. David Lieberman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Sunny A.M. Koshy, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

---

[*]The Honorable George Caram Steeh, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

GEORGE CARAM STEEH, Senior District Judge.   Defendant-Appellant Frank Randolph was convicted after a jury trial on counts of conspiracy to violate the drug laws, conspiracy to commit money laundering and related offenses.  Randolph was sentenced to a concurrent term of imprisonment of 70 months on all counts.  For purposes of sentencing, all of the convictions were grouped, with the money laundering conspiracy conviction driving the ultimate sentence because it resulted in the highest offense level.  Randolph challenges his convictions and sentence.

For the reasons that follow, we REVERSE the drug conspiracy conviction in Count One and REMAND to the district court for entry of a judgment of acquittal in favor of Randolph.  We AFFIRM the district court's judgment of conviction as to the remaining counts.  However, in sentencing Randolph, the district court determined that he laundered in excess of $200,000 during the course of the money laundering conspiracy without making adequate findings of fact on the record.  We therefore VACATE Randolph's sentence and REMAND to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Randolph's convictions center around his involvement in a family-run drug trafficking operation in Pulaski, Tennessee.  In late 2009, with the help of two confidential informants, a joint task force of local and federal authorities began investigating Randolph's half-brother, Travis Gentry.  The joint task force used video and wiretap surveillance to learn the details of Gentry's drug operation—dating back to early 2007—involving the distribution of cocaine, cocaine base and marijuana.  Through the investigation, Randolph's role in helping Gentry hide some of the drug trafficking proceeds became known.  Randolph stored Gentry's money at his home and in certificates of deposit.

On March 17, 2011, the joint task force concluded its investigation by conducting a series of coordinated raids.  Firearms and cash were seized from Randolph's home.  In addition, two

safety deposit keys were found in a safe, leading authorities to Randolph's bank—the First National Bank in Pulaski.   Pursuant to a search warrant, a safety deposit box belonging to Randolph was searched.  Cash was found in the safety deposit box, including, $2,100 traced back to marked money that the joint task force used in effectuating a controlled purchase of cocaine between a confidential informant and Gentry.   A total of approximately $165,000 in property was seized from Randolph.   Of this amount, $124,641.51 was seized directly from Randolph's bank accounts.

Initially charging twenty defendants in drug trafficking and money laundering conspiracies, the government filed a Second Superceding Indictment after multiple defendants pleaded guilty along the way.   The Second Superceding Indictment charged five defendants: Travis Gentry, Frank Randolph, Patrick Smith, Betty Gentry and Todd Bryant.   Randolph was charged in five counts: conspiracy to violate the federal drug laws, in violation of 21 U.S.C. § 846 (Count One); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two);   knowingly possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three); receiving, relieving, comforting and assisting others to hinder and prevent their apprehension, trial and punishment, in violation of 18 U.S.C. § 3 (Count Ten); and perjury at the initial appearance, in violation of 18 U.S.C. § 1621(1) (Count Twelve).

Randolph negotiated with the government to enter into a plea agreement.   The plea agreement required Randolph to plead guilty to (1) being an accessory after the fact to the drug conspiracy; and (2) perjury.   In exchange, the government agreed to allow Randolph to be sentenced to time-served, which at the time was less than one-year.   The plea deal fell through, however, because Randolph would not agree that he, on occasion, obtained controlled substances for Gentry.

Three of the five defendants—Travis Gentry, Randolph and Smith—went to trial together in October 2012.  Randolph's defense to the charges against him was that the monies seized from him were obtained from legitimate sources—two legitimate jobs—and did not constitute drug trafficking proceeds.   To this end, Randolph sought to cross-examine a government witness (Agent Darryl Richardson) about the government's position in pretrial forfeiture proceedings that

money seized from Randolph's bank accounts constituted "substitute assets"; but, sustaining the government's objection at trial, the district court did not permit Randolph to pursue this line of questioning.  A little more background information is necessary to understanding the relevance of Randolph's inquiry.

Prior to trial, Randolph filed a motion seeking the return of the $124,641.51 seized from his bank accounts.  Randolph argued that, because the government did not initiate civil forfeiture proceedings, it was required to return the money to him.  The government took the position that the seized funds were "substitute assets," and, therefore, properly forfeited prior to trial.  Citing to the government's concession that the funds constituted "substitute assets," the district court ordered the funds returned to Randolph.  The district court reasoned that the government was not entitled to seizure of substitute assets prior to Randolph being convicted at trial.  It was the government's pretrial position that the funds constituted "substitute assets" that Randolph wanted to examine Agent Richardson about at trial.

The jury convicted Randolph of the drug trafficking and money laundering conspiracies, as well as perjury and aiding and abetting.  Randolph was acquitted of knowingly possessing a firearm in furtherance of a drug trafficking crime.  As it relates to the drug trafficking conspiracy charged in Count One, however, the verdict used multiple sub-questions after asking the general question of whether Randolph was "Guilty" or "Not Guilty."  The result was anything but a model of clarity.

In determining whether the defendants were guilty of the drug trafficking conspiracy charged in Count One, the jury was first asked to find whether each defendant was "Guilty" or "Not Guilty" of the conspiracy.  Next, the jury was required to determine, in three separate sub-questions, the amount of cocaine, crack cocaine and marijuana—the drugs that were charged in the conspiracy—"involved in the conspiracy."  One of the options available for the jury to choose was "None."  On Randolph's verdict form, the jury checked "Guilty," but as to the amount of cocaine, crack cocaine and marijuana involved in the conspiracy, checked "None" as it relates to each drug.

Initially, the district court instructed the jury, "If you unanimously find that a particular defendant did not possess any particular controlled substance, mark none on the appropriate

special verdict form. If you unanimously find that a particular controlled substance was not involved in the offense, mark none on the appropriate special verdict form." Following this instruction, the government recognized that the possession inquiry was irrelevant as it relates to the conspiracy charge and requested the district court strike the prior instruction. Agreeing with the government, the district court corrected the instruction to the jury: "If you unanimously find that – cross out *a particular defendant did not possess.* Cross out *a particular defendant did not possess any of.* It should read . . . , If you unanimously find that a particular controlled substance was not involved in the offense, mark none on the appropriate special verdict form."

Prior to sentencing, a presentence investigation report ("PSR") was prepared by the probation department. The PSR concluded (relying on the government's argument) that the investigation revealed Randolph laundered more than $200,000, but less than $400,000, during the course of the money laundering conspiracy. This resulted in an additional 12 points being added to Randolph's base offense level. Ultimately, Randolph's total offense level was calculated as 30, with a criminal history category of I, resulting in Guideline range of 97-to-121 months. The Guideline range for Randolph's sentence was calculated by grouping all of his convictions together. The offense level applicable to the group of convictions was the offense level relative to the Count Two money laundering conspiracy conviction because it resulted in the highest offense level. Therefore, the Count Two conviction drove the district court's Guideline calculation.

In his sentencing memorandum, Randolph objected to the PSR's calculation of the laundered funds, contending that "[t]he only money arguably proven to have been 'laundered' . . . was $2100 from a Travis Gentry drug sale found in his safe deposit box." This would not have resulted in any increase to his base offense level. *See* U.S.S.G. § 2B1.1(b)(1). The district court overruled Randolph's objection stating that "[t]he testimony of Amber Stack, among others, established that the money laundering was easily in excess of $200,000." Notwithstanding this finding, however, the district court sentenced Randolph to a below-Guideline, concurrent term of imprisonment of 70 months on each count. In so doing, the district court stated that it was considering the facts and circumstances surrounding Randolph's aborted plea agreement.

Randolph filed a motion for new trial and motion for judgment of acquittal in the district court as it relates to Counts One, Two and Ten. Recognizing the jury's inconsistent findings relating to the drug trafficking conspiracy, Randolph argued that his convictions of Counts One and Ten were untenable because the jury found him guilty of a drug trafficking conspiracy involving none of the charged drugs. Randolph also argued that he should have been permitted to cross-examine Agent Richardson about the government's pretrial position in forfeiture proceedings that the funds seized from his accounts were "substitute assets." The district court denied Randolph's motions. First, the district court stated that "the individual findings of drug possession quantity were for purposes of sentencing and, clearly, a defendant could be convicted of the drug conspiracy, even if found to have possessed no drugs." The district court went on to state: "Perhaps the wording of the question on the Verdict Forms was inartful, asking 'the amount of [cocaine, crack cocaine, marijuana] involved in the conspiracy' instead of the amount of each drug possessed or intended to be distributed by each defendant during the conspiracy." Second, as to Randolph's position that he should have been permitted to question Agent Richardson about the pretrial forfeiture proceedings, the district court held that Randolph was not prejudiced because he was provided with alternative methods of eliciting the same testimony.

Randolph timely appeals from the district court's final judgment entered against him on March 28, 2013. He challenges his convictions and sentence on the grounds addressed below.

## II. ANALYSIS

### A. Inconsistent Verdict

We begin by addressing Randolph's challenge to his Count One drug trafficking conspiracy conviction. Randolph argues that his Count One conviction should be reversed because the jury could not have found him guilty of the conspiracy while simultaneously determining that the conspiracy did not involve any of the charged drugs. He is correct.

To sustain a drug trafficking conspiracy conviction under 21 U.S.C. § 846, "the government must have proved (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841(a)(1); (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) (citing *United States*

*v. Welch*, 97 F.3d 142, 148–49 (6th Cir. 1996)).  Section 841(a)(1) makes it unlawful for any person to "knowingly or intentionally. . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance[.]" Therefore, to convict Randolph of the charged conspiracy, the jury was required to find that he agreed to "knowingly or intentionally. . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance."  The controlled substances charged in the Second Superceding Indictment were cocaine, cocaine base and marijuana.

Randolph and the government seem to agree that the jury's answers to the questions related to Count One in Randolph's verdict form are confusing.  The jury found Randolph guilty of the drug trafficking conspiracy while simultaneously determining that the amount of charged drugs "involved in" that conspiracy were "none."  Of course, this cannot be the case.  To involve means "to have or include (someone or something) as part of something."  "Involve." Merriam-Webster Online Dictionary. 2015. http://www.meriam-webster.com/dictionary/involve.    In essence, the jury found Randolph guilty of conspiracy to distribute drugs, and, at the same time, found that the conspiracy "had" or "included" none of the drugs charged by the government. Despite this obvious inconsistency in the jury's responses in the verdict, there is much disagreement about what we should do about the confusion.

Randolph argues that we should reverse his Count One conviction because the jury's logically inconsistent findings are analogous to a mutually exclusive verdict.  In addition, Randolph cites to Rule 49 of the Federal Rules of Civil Procedure arguing that, like a civil case, where special interrogatory answers are inconsistent in a criminal case, a new trial is the appropriate remedy.

The government's main argument in opposition is that inconsistent verdicts generally are not reviewable.  And this case does not involve a mutually exclusive verdict, which would be reviewable, the government argues.  According to the government, the jury's findings related to the amount of drugs were relevant only as it relates to a determination of the mandatory minimum penalties contained in 21 U.S.C. § 841.  Therefore, the government asks us to affirm Randolph's Count One conviction.

Our analysis begins with an explanation of inconsistent verdicts. The Supreme Court first opined on inconsistent verdicts in *Dunn v. United States*, 284 U.S. 390 (1932). In *Dunn*, the defendant was indicted on three counts: (1) maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor; (2) unlawful possession of intoxicating liquor; and (3) unlawful sale of such liquor. *Id.* at 391. He was convicted of the first count, but acquitted on counts two and three. *Id.* at 391–92. The defendant argued that his conviction of count one should be overturned because it was inconsistent with being acquitted of counts two and three. *Id.* at 392. But the Court rejected the defendant's argument, explaining that "[c]onsistency in the verdict is not necessary." *Id.* at 393. The Court held that, where separate counts charge separate crimes in a single indictment, the separate counts are treated the same as separate indictments separately tried. *Id.* The Court recognized that a "verdict may have been the result of compromise, or of a mistake on the part of the jury," but that "verdicts cannot be upset by speculation or inquiry into such matters." *Id.* at 394.

The *Dunn* holding was applied in *United States v. Dotterweich*, where a verdict in a joint trial that found the president of a corporation guilty, while simultaneously finding the corporation not guilty, was found to be permissible. 320 U.S. 277, 278–79 (1943). The Court, citing *Dunn*, explained: "Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely increasing, as it were, the cost of running the business of the corporation, is immaterial. Juries may indulge in precisely such motives or vagaries." *Id.* And again *Dunn* was applied in the Court's decision in *Harris v. Rivera*, where the defendant unsuccessfully challenged his conviction of robbery and related offenses on the grounds that a co-defendant was acquitted of the same offenses after a joint bench trial. 454 U.S. 339, 340 (1981). The Court reasoned, "[e]ven assuming that this acquittal was logically inconsistent with the conviction of respondent, respondent, who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional ground to complain that [a co-defendant] was acquitted." *Id.* at 348.

The Court revisited *Dunn* in *United States v. Powell*, 469 U.S. 57 (1984). In *Powell*, the defendant was indicted by a grand jury on 15 counts of violations of federal law related to her involvement in a drug distribution operation. *Id.* at 59. The defendant was convicted of using

the telephone in "committing and in causing and facilitating" the "conspiracy to possess with intent to distribute and possession with the intent to distribute cocaine," but acquitted of conspiring with others to knowingly and intentionally possess with intent to distribute cocaine and possession of a specific quantity of cocaine with intent to distribute it. *Id.* at 59–60. She argued that she was entitled to reversal of the telephone facilitation convictions because the verdicts were inconsistent. *Id.* at 60. Specifically, she averred that "proof that she had conspired to possess cocaine with intent to distribute, or had so possessed cocaine, was an element of each of the telephone facilitation counts; since she had been acquitted of these offenses . . . , [she] argued that the telephone convictions were not consistent with those acquittals." *Id.* The Court rejected this argument, upholding the defendant's convictions.

In rejecting the defendant's argument in *Powell*, the Court explained that inconsistent verdicts do not necessarily mean a windfall for the government. *Id.* at 65. Indeed, "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* The Court continued:

> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course... For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest.

*Id.* A defendant is protected against jury irrationality, the Court explained, by "the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* at 67.

Applying the above precedents, we have repeatedly recognized the proposition that inconsistent verdicts in a criminal case generally are not reviewable. *United States v. Smith*, 749 F.3d 465, 498 (6th Cir. 2014). This, however, is not a hard-and-fast rule. There are two exceptions. First, where jury verdicts "are marked by such inconsistency as to indicate arbitrariness or irrationality," we have opined that "relief may be warranted." *United States v. Lawrence*, 555 F.3d 254, 263 (6th Cir. 2009). Second, in a situation "where a guilty verdict on

one count necessarily excludes a finding of guilt on another," i.e. a "mutually exclusive" verdict, this court can review the defendant's challenge to the verdict. *United States v. Ruiz*, 386 F. App'x 530, 533 (6th Cir. 2010) (citing *Powell*, 469 U.S. 69, n. 8); *see also United States v. Ashraf*, 628 F.3d 813, 823–24 (6th Cir. 2011) (recognizing two exceptions to general rule that inconsistent verdicts are not reviewable).

Against this backdrop, we turn to our situation, which is different. Here, we are not dealing with inconsistent verdicts. Instead, we have an internal inconsistency in the same count, as it relates to the same defendant, in the same verdict. We have not addressed this situation, but one of our sister circuits has.

In *United States v. Shippley*, the defendant was charged in a federal drug conspiracy under 21 U.S.C. § 846. 690 F.3d 1192, 1193 (10th Cir. 2012). At the end of trial, the jury returned a general verdict finding the defendant guilty of the conspiracy charge. *Id.* However, in response to the court's special interrogatories, the jury indicated that the defendant "had not conspired to distribute *any* of the drugs listed in the indictment. In effect, the jury both convicted *and* acquitted [the defendant] of the charged conspiracy." *Id.* (emphasis in original). Faced with this dilemma, the district court ordered the jury to deliberate further, instructing the jury that "'[y]our ostensible verdict of guilty as to the crime of conspiracy as charged in Count One of the Indictment is inherently inconsistent with your answers to the Special Questions.'" *Id.* The district court gave the jury three options: (1) reconsider its answers to the special interrogatories if it wanted to render a guilty verdict; (2) reconsider its answer in the general verdict form if it wished to render a verdict of not guilty; or (3) stand on its existing verdict. *Id.* at 1193–94. The result: an unambiguous guilty verdict finding the defendant guilty of conspiring to distribute 500 grams or more of cocaine. *Id.* at 1194.

On appeal, the defendant challenged the district court's procedure in allowing the jury to deliberate further. Relying on *Powell* and *Dotterweich*, the defendant argued that the district court should have entered a verdict of acquittal after receiving the inconsistent general verdict and special interrogatory answers. *Id.* Requiring the jury to deliberate further, the defendant argued, violated his Fifth Amendment right to due process and Sixth Amendment right to a jury trial. *Id.* Distinguishing the facts from *Powell* and *Dotterweich*, the Tenth Circuit explained:

In our case, it wasn't just logically incongruous to enter the jury's verdict, it was metaphysically impossible. *Powell* and *Dotterweich* involved logical inconsistencies *between counts* and *between defendants*. However illogical, the verdicts in those cases could be given full effect. This case, by contrast, involves an inconsistency on the *same count with the same defendant*—an inconsistency that simply could not have been given full effect. Something had to give in our case that didn't have to give in these other cases. To enter an acquittal, the district court would have needed to disregard the fact that the jury expressly found [the defendant] guilty. To enter a guilty verdict, the court would have needed to overlook the special verdict findings that [the defendant] did not conspire to distribute any of the drugs at issue in the case. And nothing in *Powell* or *Dotterweich* speaks either explicitly or implicitly about what a court's to do in these circumstances, let alone suggests the district court committed an error of constitutional magnitude (or otherwise) in proceeding as it did in this case.

*Id.* at 1195–96 (emphasis in original).

We agree with *Shippley* that *Powell* and *Doetterweich* are different than the situation at hand and do not control the analysis. Here, unlike the situations in *Powell*, *Doetterweich* and the inconsistent verdict line of cases, the jury's verdict, when read in its entirety, reveals that the government failed to prove an essential element of the charged drug conspiracy. For the jury to find Randolph guilty of the drug conspiracy, an essential element the government was required to prove beyond a reasonable doubt was that the drugs charged in the indictment were "involved in" the conspiracy. As explained, the final jury instructions asked the jury to "mark none on the appropriate special verdict form" if "you unanimously find that a particular controlled substance was not involved in the offense." Because the jury found that none of the charged drugs were "involved in" the conspiracy, it follows that Randolph cannot be guilty of the charged conspiracy. He is entitled to a judgment of acquittal.

It is well-established that "[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all of the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 511 (1995). Where a jury's special verdict finding negates an essential element of the offense, the defendant must be acquitted and cannot be retried on that offense. *See United States v. Lucarelli*, 476 F. Supp. 2d 163, 167 (D. Conn. 2007) (acquitting defendant of securities fraud charges where jury, in special interrogatories, found that defendant did not act with specific intent, despite finding defendant guilty in general verdict); *see also State v. Goins*, 92 P.3d 181, 189–90 (Wash. 2004) (en banc) (Sanders, J., dissenting). To

allow a retrial when the government fails to prove an essential element of the charge beyond a reasonable doubt violates the Double Jeopardy Clause of the Fifth Amendment, which states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Here, the jury's special verdict found that the drugs "involved in" the conspiracy were "none." This unanimous finding negates an essential element of the charged drug conspiracy and is only susceptible to one interpretation: the government failed to prove Randolph guilty of the charged drug conspiracy beyond a reasonable doubt.

To the extent that dicta in *Shippley* suggests that the appropriate remedy in this situation is a remand for a new trial, we disagree. 690 F.3d at 1196 ("To enter *any* verdict when the jury first returned, the district court would have had to choose to "gore" one side or the other—just what *Powell* suggests courts should *not* do."). As *Shippley* recognized, inconsistences in the same count as to the same defendant are different than *Powell* where the inconsistency is between counts. Where the inconsistency is between counts, we do not know which count the jury erred in deciding—the acquittal or the conviction. But in our situation, where the inconsistency is in the same count as to the same defendant, if we allow the government "another opportunity to subject [Randolph] to 'factfinding proceedings going to guilt or innocence,' hoping this time for a less ambiguous result," "[t]hat would be a classic instance of impermissible double jeopardy." *United States v. Fernandez*, 722 F.3d 1, 39 (1st Cir. 2013). Indeed, one jury has already determined that the amount of drugs "involved in" the purported drug conspiracy were "none." To allow a different jury to reconsider this finding is double jeopardy.

For these reasons, we reverse Randolph's judgment of conviction of Count One and remand to the district court for entry of a judgment of acquittal.[1]

## B.  District Court's Discretion In Handling
## Evidence As It Relates To Pretrial Forfeiture Proceedings

Randolph next challenges his Count Two money laundering conspiracy conviction. Randolph argues that the trial court abused its discretion in (1) allowing Agent Darryl

---

[1]Given this outcome, we do not address Randolph's alternative argument that the evidence was insufficient to convict him of the drug trafficking conspiracy.

Richardson to testify about funds seized from him during the course of the drug investigation; and (2) precluding him from questioning Agent Richardson about the pretrial forfeiture proceedings in which over $124,000 of seized funds were returned to Randolph.  In short, Randolph argues that the jury would not have convicted him of a money laundering conspiracy if the jury had known that the government had taken the pretrial position that the property seized from Randolph constituted "substitute assets."  We find no error in the district court's handling of the evidence.

We review the district court's admission or exclusion of evidence for abuse of discretion. *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008).  The district court's conclusions of law are reviewed de novo, while the court's factual determinations underpinning the legal conclusions are reviewed for clear error.  *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006).  If there is no objection to the admission or exclusion of evidence at trial, our review is restricted to plain error, i.e. (1) an error, (2) that is plain, and (3) affecting the defendant's substantial rights.  *United States v. Atchley*, 474 F.3d 840, 854 (6th Cir. 2007).

Randolph first argues that the district court should not have permitted the government to question Agent Richardson about the funds seized from Randolph during the course of the investigation because the government conceded in pretrial forfeiture proceedings that the funds constituted "substitute assets," not drug trafficking proceeds.  But at trial Randolph did not object to Agent Richardson's testimony (or any other witness' testimony) describing the funds that were seized from Randolph's accounts.  Therefore, Randolph must establish plain error, which he cannot do.

At trial, Randolph's attorney asked agent Richardson:

Q    Agent Richardson, apart from the $2,100 that was found in Mr. Randolph's safe deposit box that's allegedly marked money from a December 2009 transaction – do you know the $2,100 I'm talking about?

A    I do.

Q    Aside from that, were you able to link any of Mr. Randolph's other accounts to any drug transaction?

A    That would be no.

In addition, Randolph in his case-in-chief presented testimony that he had multiple legitimate sources of income. Because Randolph was able to establish through alternative evidence that the funds seized from his accounts came from legitimate sources, the district court did not plainly err in allowing Agent Richardson to testify about the property seized from Randolph.

Nor did the district court err in precluding Randolph from cross-examining Agent Richardson about the pretrial forfeiture proceedings on the basis that delving into the specifics of the pretrial proceedings would be "confusing" for the jury. Through the alternate line of questioning permitted by the district court, and the testimony elicited in Randolph's case-in-chief, Randolph established the same point he sought to establish by referencing the pretrial forfeiture proceedings: that the money seized from his accounts came from legitimate sources and were not drug trafficking proceeds. The jury had the ability to weigh this evidence, ultimately rejecting the evidence favoring Randolph's position.

Because Randolph had the opportunity, through alternative means, to establish that the funds seized from his accounts constituted legitimate income, even if the district court erred in handling the evidence (which we conclude above that it did not), the error was harmless. We therefore affirm Randolph's Count Two money laundering conspiracy conviction.

## C. District Court's Determination of Laundered Funds

Randolph also challenges the district court's determination in sentencing proceedings that the amount of funds he laundered during the course of the money laundering conspiracy were in excess of $200,000. Over Randolph's objection to the PSR, the district court, citing Amber Stack's testimony at trial, determined that Randolph laundered in excess of $200,000 during the course of the money laundering conspiracy. However, the district court's finding lacked specificity. Accordingly, we vacate Randolph's sentence and remand to the district court for further proceedings consistent with this opinion.[2]

"A sentence will be found procedurally unreasonable when the district court failed to accurately calculate the sentencing recommendation of the United States Sentencing

---

[2]Because Randolph's convictions were grouped, and the Count Two conviction served as the base for the district court's sentence (it had the highest offense level), the proper remedy for the district court's error is vacating the sentence and remanding to the district court for further proceedings consistent with this opinion.

Guidelines." *United States v. Anderson*, 526 F.3d 319, 323 (6th Cir. 2008) (citations omitted). The district court's legal conclusions regarding the Guidelines are reviewed de novo, while factual findings are reviewed for clear error. *Id.* (citations omitted). "A remand will not be required, and an error deemed harmless, however, when 'we are certain that . . . any such error did not affect the district court's selection of the sentence imposed." *Id.* at 324 (citation and internal quotation marks omitted).

Federal Rule of Criminal Procedure 32(i)(3)(B) requires the district court to rule at sentencing on "any disputed portion of the presentence report or other controverted matter." Once a defendant raises a dispute during the sentencing hearing, "the 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'" *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007).

In applying a co-conspirator's actions against a defendant in sentencing, the government must prove by a preponderance of the evidence that the co-conspirator's actions were reasonably foreseeable to the defendant. *United States v. Wood*, 604 F.3d 286, 290–91 (6th Cir. 2010). "'Whether a co-conspirator's actions were reasonably foreseeable is a factual finding reviewed for clear error.'" *Id.* (citing *United States v. Dupree*, 323 F.3d 480, 490 (6th Cir. 2003)).

Randolph argues that the district court clearly erred because Amber Stack's testimony did not establish that he laundered in excess of $200,000. At most, Randolph avers, the evidence at trial established $100,000 in non-payroll deposits, not including Randolph's earnings from his successful window-tinting business totaling approximately $10,000 to $20,000. If the district court applied the $103,000 value, it would have increased Randolph's base offense level by 8 points, not the 12 points that resulted from a finding that the laundered funds exceeded $200,000. *See* U.S.S.G. § 2B1.1(b).

The government responds that the district court correctly determined that the laundered funds exceeded $200,000. The trial proof, the government argues, established that Randolph, at a minimum, personally laundered in excess of $100,000 (the non-payroll deposits). In addition, the government contends that, given that Randolph was charged in a *conspiracy* to commit money laundering, he is not only responsible for the monies he personally laundered, but also the

reasonable and foreseeable acts of his co-conspirators.  Therefore, the government contends that Randolph is also responsible for the amount of money laundered by his co-defendants.  Taking this into consideration, the government says that the amount of money laundered during the course of the conspiracy was well in excess of $200,000.

We do not address the merits of the parties' arguments because it is unclear from the record below the reasons the district court applied the $200,000 figure.  The district court failed to adequately explain how it reached the $200,000 calculation.  The district court simply stated that "[t]he testimony of Amber Stack, among others, established that the money laundering was easily in excess of $200,000."  The district court did not explain whether the $200,000 was laundered by Randolph individually, and, if so, the facts that supported such conclusion.  Alternatively, if the district court determined that the $200,000 figure incorporated the reasonable and foreseeable money laundering acts committed by co-conspirators, it failed to state its reasons to support such a finding.  The district court clearly erred by failing to provide a detailed explanation of how it reached the conclusion that Randolph laundered in excess of $200,000.

The government concedes that the district court erred in failing to make individualized fact findings.  *See* Pl's. Br. at 59 (citing *United States v. Orlando*, 281 F.3d 586, 600 (6th Cir. 2002)).  The government argues, however, that Randolph did not request the district court make individualized findings of fact, and, therefore, waived the issue.  We disagree.  First, Randolph objected to the PSR and he voiced his objection during the sentencing proceedings.  Second, it was the government's burden at sentencing to show by a preponderance of the evidence that Randolph's co-conspirators' money laundering actions were reasonable and foreseeable to Randolph, as well as the amount of money laundered by the co-conspirators.  *Wood*, 604 F.3d at 290–91.  And it was clear error for the district court to conclude that Randolph laundered in excess of $200,000 without a sufficient explanation.

Although the district court sentenced Randolph below the Guideline range, the error is not harmless because that range may change on remand.  The Guideline range served as the district court's base before it decided to deviate downwards from that range.  On remand, the Guideline range may change, which may influence the district court's ultimate sentence.

For these reasons, we vacate Randolph's sentence and remand to the district court for further proceedings consistent with this opinion.

### D.  Denial of "Minimal Role" Reduction

Next, Randolph challenges the district court's denial of a "minimal role," four-level reduction of his base offense level under U.S.S.G. § 3B1.2.  Discerning no error, we affirm.

The district court's denial of Randolph's request for a four-level reduction is reviewed for clear error.  *United States v. Garcia-Morones*, 49 F. App'x 556, 557 (6th Cir. 2002).  A minimal participant in a conspiracy is a defendant "who [is] plainly among the least culpable of those involved in the conduct of a group.  Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."  U.S.S.G. § 3B1.2 n.4.

Randolph contends that he was substantially less culpable than the other participants in the conspiracy.  The minimal role of holding Gentry's money (never giving it back to him), Randolph argues, requires a finding that he is substantially less culpable than the other co-conspirators, and deserving of a four-level reduction.

The government disagrees.  The government contends that, with the knowledge that Gentry was a drug dealer, Randolph played an active role in facilitating the drug trafficking conspiracy by secreting Gentry's drug proceeds.  The government is correct.

The district court did not clearly err in declining to find that Randolph was a minimal participant.  Although we reverse Randolph's drug trafficking conspiracy conviction, Randolph was convicted of the money laundering conspiracy.  We have explained that "[t]he Application Notes to § 3B1.2 instruct that the 'minimal participant' reduction is intended to be used 'infrequently,' and applies only to defendants who are 'plainly among the least culpable of those involved in the conduct of a group.'" *United States v. Branham*, 460 F. App'x 538, 548 (6th Cir. 2012) (citation omitted).  As the district court explained during Randolph's sentencing proceedings, Randolph knew that Gentry was a drug dealer who had never held a job, yet he continued to receive money from Gentry on a regular basis, hiding the money for him.  To be considered a minimal participant, Randolph's knowledge of the scope and structure of the

enterprise weighs against him here. *Branham*, 460 F. App'x at 548–49. Given this knowledge, the district court did not clearly err in declining to find that Randolph was a minimal participant under § 3B1.2.

**E. Remaining Challenges**

Finally, to the extent that Randolph challenges his convictions and sentence on any other bases, we hold that Randolph waived appellate review by failing to adequately raise the issues in briefing. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted).

**III. CONCLUSION**

For the reasons stated above, we REVERSE the drug conspiracy conviction in Count One and REMAND to the district court for entry of a judgment of acquittal in favor of Randolph on Count One, AFFIRM the district court's judgment of conviction as to the remaining counts, VACATE Randolph's sentence and REMAND to the district court for further proceedings consistent with this opinion.