**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jigar PATEL, Srinivas Reddy, and Shahzad Mirza, Defendants–Appellants.**

**Nos. 14–2436, 15–1103, and 15–1881**

United States Court of Appeals, Sixth Circuit.

FILED June 09, 2016

Patricia Gaedeke, Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee (Case Nos. 14–2436, 15–1103, 15–1881).

Kenneth P. Tableman, Grand Rapids, MI, for Defendant–Appellant Jigar Patel (Case No. 14–2436).

Jigar Patel, Pro Se (Case No. 14–2436).

James L. Feinberg, Law Offices, Detroit, MI, for Defendant–Appellant Srinivas Reddy, aka Dr Reddy (Case No. 15–1103).

Michael R. Dezsi, Law Office, Detroit, MI, for Defendant–Appellant Shahzad Mirza (Case No. 15–1881).

Before: COOK and KETHLEDGE, Circuit Judges; and SARGUS, District Judge.*

---

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

KETHLEDGE, Circuit Judge.

A federal jury convicted Shahzad Mirza, Jigar Patel, and Srinivas Reddy of health-care fraud and conspiracy to commit healthcare fraud in violation of 18 U.S.C. §§ 1347, 1349. The jury also convicted Patel of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The district court sentenced each defendant to a below-guidelines term of imprisonment and ordered them to pay restitution. On appeal, they argue that the court erred in its jury instructions; that the government presented insufficient evidence to support their convictions; and that the restitution orders violate the Sixth Amendment. Mirza and Reddy also argue that the court erred in calculating their sentencing guidelines ranges. We affirm.

I.

Medicare covers certain in-home health-care for home-bound patients. Before a patient can receive in-home care, however, a physician must certify that the patient is unable to leave his home for treatment. Beginning in 2008 and continuing into September 2011, Tausif Rahman ran a series of fraudulent home-healthcare companies, collectively called Physician's Choice. The companies purported to provide physical therapy to home-bound patients. In fact, however, they used the Medicare numbers, personal information, and signatures of customers fraudulently to bill for in-home care that they never provided. In exchange, the customers got cash or drugs.

To create an appearance of legitimacy, Physician's Choice created "patient files," with content fabricated by "writers." These writers filled in the dates and details of fictitious physical therapy sessions, including the patient's pain level, ability to move, and response to treatment. Rahman got licensed physicians and physical therapists to sign certain documents. Initially,

Rahman also hired a licensed physician to perform a superficial meeting with each customer. When that doctor died, Rahman recruited new doctors to participate in his scheme, but they refused actually to meet any customers.

The defendants here were involved in Rahman's scheme in varying capacities. Shahzad Mirza, a licensed physical therapist, joined Rahman's operation at the outset. He refused to see customers but signed hundreds of files. He stopped working for Rahman in late 2009 or early 2010. Jigar Patel, a physical therapy assistant, was one of the original writers. He eventually formed his own physical therapy company—with a licensed physical therapist on staff—and supplied entire files to Physician's Choice with that therapist's signature. Physician's Choice paid Patel's fraudulent company for these files. Rahman hired Srinivas Reddy—a doctor in India but unlicensed in the U.S.—to meet with customers after Rahman's licensed doctors refused to do so. Reddy interviewed customers and used blank prescriptions signed by the licensed doctors, to give drugs to customers.

In 2011, the government learned of the Medicare-fraud scheme and recruited one of Rahman's employees to make an undercover recording of other employees signing up new customers. A few months later, a federal grand jury indicted Patel and Reddy (and a dozen others) for healthcare fraud and conspiracy to commit healthcare fraud, and Patel for money laundering. See 18 U.S.C. §§ 1347, 1349, 1956(a)(1)(B)(i). In 2014, after many of the conspirators had pled guilty, a federal grand jury issued a Second Superseding Indictment charging Mirza with healthcare fraud and conspiracy. See R. 360.

Patel, Reddy, and Mirza went to trial. After the close of the government's proofs,

each defendant moved for a judgment of acquittal. The district court denied their motions. The jury convicted the defendants on all counts. The court calculated a guidelines range for Mirza of 57–71 months' imprisonment, for Patel of 78–97 months, and for Reddy of 63–78 months. But the court sentenced Mirza and Patel to only 50 months' imprisonment and Reddy to only 42. The court also ordered each defendant to pay restitution: $6,489,370.17 for Mirza, $1,952,095.90 for Patel, and $1,652,132.37 for Reddy. All three appealed.

## II.

The defendants challenge their convictions and sentences on numerous grounds.

### A.

■ Mirza and Reddy argue that the district court gave the jury an erroneous instruction regarding "deliberate ignorance." We review the court's jury instructions for an abuse of discretion. *See United States v. Williams*, 612 F.3d 500, 506 (6th Cir.2010).

An instruction regarding "deliberate ignorance" explains to the jury that a statutory knowledge element can be satisfied by "the deliberate avoidance of knowledge." *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir.2012). The instruction is appropriate when the defendant claims a lack of knowledge and "the facts and evidence support an inference of deliberate ignorance." *Id.* Here, Reddy and Mirza argued at trial that they were innocent of Medicare fraud because they had believed Rahman's assurances that he ran a legitimate business. At the conclusion of trial, and over the defendants' objections, the court instructed the jury that

> [i]f you are convinced that the defendants ... deliberately ignored a high probability that Physician[']s Choice ... w[as] engaged in health care fraud ...

you may find that one or more of these defendants knew that the company would engage in health care fraud. But to find this, you must be convinced beyond a reasonable doubt that the defendants ... were aware of a high probability that Physician[']s Choice ... w[as] engaged in health care fraud ... and that the defendants deliberately closed their eyes to what was obvious.

R. 485 at PageID 4653–54. This instruction is lifted verbatim from the Pattern Criminal Jury Instructions for the Sixth Circuit and is an accurate statement of the law. *See Pattern Criminal Jury Instructions for the Sixth Circuit* § 2.09; *United States v. Mari*, 47 F.3d 782, 785 (6th Cir.1995).

Mirza and Reddy contend that the government presented no evidence of deliberate ignorance at trial, so the court had no basis to give this instruction. But the government presented evidence that Reddy met with patients and prescribed drugs to them even though he was not a licensed doctor, and Mirza refused to see patients but signed hundreds of patient files. Although both claimed at trial not to know that what they were doing was illegal, their behavior is strong evidence that they either knew about the illegality or shut their eyes to it. Thus the instruction was properly supported by evidence at trial.

Mirza and Reddy also contend that the instruction served only to mislead the jury into thinking that they could convict the defendants if they were negligent. But the court immediately followed its instruction on deliberate ignorance with the caution that "[c]arelessness or negligence or foolishness on [the defendants'] part is not the same as knowledge and is not enough to convict." The defendants' argument is meritless. *See Mari*, 47 F.3d at 785.

Mirza contends that the deliberate-ignorance instruction might have confused the

jury because, he says, it conflicted with the court's instruction that the jury had to find beyond a reasonable doubt that the defendants knowingly and voluntarily joined the conspiracy, and knowingly and willfully participated in a scheme to commit healthcare fraud. But the court clearly presented deliberate ignorance as an alternative to actual knowledge, either of which satisfies the statutory knowledge requirements. Immediately before the deliberate-ignorance instruction, the court said "I want to explain something about proving a defendant's knowledge." R. 485 at PageID 4653. So the jurors were not confronted with a conflict, but a pair of lawful alternatives—knowledge and deliberate ignorance.

Reddy contends that the pattern jury instruction on deliberate ignorance failed to make clear that the defendant must "subjectively believe that there is a high probability that a fact exists[.]" *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011). But our instruction expressly requires that the jury find that the defendants "w[ere] aware of a high probability" that they were involved in criminal activity. *See Pattern Criminal Jury Instructions for the Sixth Circuit* § 2.09. The district court therefore did not err when it instructed the jury on deliberate ignorance.

## B.

All three defendants argue that insufficient evidence supports their convictions. We uphold their convictions if, taking the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of their crimes beyond a reasonable doubt. *See United States v. Geisen*, 612 F.3d 471, 488 (6th Cir.2010).

### 1.

Mirza and Reddy challenge their convictions for conspiracy and healthcare fraud. Both offenses require an intent to defraud. *See United States v. White*, 492 F.3d 380, 393–95 (6th Cir.2007). Mirza and Reddy contend that the government presented no evidence that they had that intent or knew about their co-conspirators' intent to defraud. But witnesses at trial testified that Reddy—who was not licensed to practice medicine in the United States—saw dozens of "homebound patients" outside of their homes and filled out pre-signed forms for those customers. *See* R. 481 at Page ID 3857–65; R. 483 at PageID 4276–78. One witness also testified that Reddy was present in an elevator when a "patient" openly discussed being paid by one of Reddy's fellow employees. *See* R. 483 at PageID 4262–63. For his part, Mirza—a licensed physical therapist—signed "patient forms" without seeing any patients. This evidence supports the jury's finding that Reddy and Mirza either knew that they were participating in a fraudulent scheme or were deliberately ignorant of that fact.

Mirza contends that his signatures in "patient files" could have been forged. But Rahman testified that Mirza signed files without seeing customers. *See* R. 509 at 6994–96. The jury could therefore find that Mirza did exactly that.

The court therefore did not err when it denied Mirza's and Reddy's motions for acquittal.

### 2.

Patel contends that the government presented insufficient evidence to support his concealment money-laundering conviction. To prove that Patel laundered money, the government had to show that Patel conducted a financial transaction

with the purpose (in whole or in part) of concealing the nature, location, source, ownership, or control of the illegal funds used in the transaction. *See* 18 U.S.C. § 1956(a)(1)(B)(i). Concealment must have been "an animating purpose of the transaction." *United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir.2010). The defendant's conduct may support an inference of intent to conceal. *See United States v. Warshak*, 631 F.3d 266, 321 (6th Cir.2010).

Here, a shell corporation controlled by Rahman, Geo Rehab LLC, transferred funds to a shell corporation controlled by Patel, MI Healthcare Staffing. Moreover, someone other than Jigar Patel was registered as president of MI Healthcare Staffing.

One purpose of this transaction was simply to transfer funds from Rahman to Patel. But a rational jury could also infer that Patel had a second purpose as well, namely to cleanse the funds of their fraudulent taint. That purpose perhaps was not, for Patel, an independent reason for entering into the transaction. But a jury could find that it was an animating purpose nonetheless so long as the funds were moving to Patel himself, since he presumably would not want to receive funds that obviously had been obtained illegally. The government presented sufficient evidence that concealment was thus one of the two purposes that drove Patel to engage in the transaction. *See Faulkenberry*, 614 F.3d at 586.

Patel also argues that we should reject our established standard for reviewing challenges to the sufficiency of the evidence supporting a conviction. We cannot do that. *See Barber v. Miller*, 809 F.3d 840, 844 (6th Cir.2015).

### C.

All three defendants argue that, under the Sixth Amendment's right to a jury trial, the jury must determine the amount of restitution beyond a reasonable doubt. But we rejected that argument in *United States v. Churn*, 800 F.3d 768, 782–83 (6th Cir.2015). Thus we reject it here. *See id.*

### D.

Reddy argues that the court attributed the wrong amount of financial loss to him for sentencing purposes. We review the court's loss calculation for clear error. *See United States v. Meda*, 812 F.3d 502, 519 (6th Cir.2015). When the court sentenced Reddy, the Sentencing Guidelines provided that, if a defendant's fraud offense caused a loss of more than one million dollars, the court must add 16 levels to the defendant's base-offense level. U.S.S.G. § 2B1.1(b)(1)(I) (2014).

Here, the government argued that the entire loss generated by the fraud scheme after Reddy joined it—$8,653,827.53—should be attributed to him. The court rejected that argument and instead relied on two documents submitted by the government. These documents reported the amount of loss specifically attributable to Reddy. The first, which the government submitted at trial, listed the Medicare reimbursements paid for services provided by the three defendants. The payments attributable to Reddy's services totaled $1.5 million. The second, which the government submitted at sentencing, showed FBI Special Agent Brian Fairweather's calculation of the loss attributable to only Reddy. To calculate this loss, Fairweather cross-referenced Rahman's records of Reddy's patient visits with Medicare data. According to Fairweather's calculations, Reddy caused $1.8 million in loss. The court did not choose between the two figures because both fell within the range for a 16-level increase. R. 513, at PageID 7117–21. Here, Reddy does not argue that the gov-

ernment's calculations were wrong. Instead, he contends that the court failed to make an individualized finding as to the loss attributable to him. But the court did undertake an individualized inquiry and found that Reddy caused a loss of more than $1 million, which is all the court needed to find to apply § 2B1.1(b)(1)(I). Reddy's argument is meritless.

### E.

Finally, Mirza argues that the court erred when it applied a two-point enhancement to his criminal-history score because, according to the court, Mirza committed his healthcare fraud while on probation. We review that finding for clear error. *See United States v. Groenendal*, 557 F.3d 419, 422 (6th Cir.2009).

The Sentencing Guidelines direct courts to add two points to a defendant's criminal-history score if he "committed the instant offense while under any criminal justice sentence, including probation[.]" U.S.S.G. § 4A1.1(d). The government bears the burden of proving the applicability of a sentence enhancement by a preponderance of the evidence. *United States v. Gates*, 461 F.3d 703, 708 (6th Cir.2006).

Mirza was placed on probation on April 20, 2010, for driving while intoxicated. At Mirza's sentencing for fraud, the government recommended a two-point enhancement based on that probation. Mirza objected, contending that his involvement in the fraud scheme ended before April 20, 2010. The court overruled his objection, noting that Mirza presented no evidence that he had withdrawn from the conspiracy before April 2010. Under federal conspiracy law, a defendant remains liable for the actions of his co-conspirators throughout the period of the conspiracy, even after he ceases active participation in the scheme, unless he takes "affirmative action to defeat or disavow the purpose of the conspir-acy." *United States v. Cox*, 565 F.3d 1013, 1016 (6th Cir.2009).

Mirza contends that the court's application of the doctrine of affirmative withdrawal at sentencing effectively shifted onto him the burden of proving that § 4A1.1(d) did not apply. But the government had no burden to prove a negative—that Mirza had not withdrawn. The government satisfied its burden by proving by a preponderance of the evidence that Mirza joined a conspiracy that itself continued until after Mirza was placed on probation. That evidence was enough to show that Mirza committed fraud (through his co-conspirators) while on probation—and thus enough to support application of § 4A1.1(d). The court therefore did not err when it applied the two-point enhancement to Mirza's criminal-history score.

\* \* \*

The district court's decisions in this case were both correct and thoroughly explained. The judgments are affirmed.