NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0451n.06

No. 20–5915

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="10">FILED<br>Oct 05, 2021<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff - Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>EUSTORGIO GONZALEZ-LEAL, aka Jessie,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant - Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

BEFORE: BOGGS, GRIFFIN, and MURPHY, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Eustorgio Gonzalez-Leal agreed to supply methamphetamine to an informant of the United States Drug Enforcement Agency. He was convicted of drug-conspiracy and possession charges. He now challenges the sufficiency of the evidence supporting his convictions, along with the sentence imposed by the district court. Finding no merit in his arguments, we affirm.

I.

The government charged defendant Eustorgio Gonzalez-Leal and Juan Rodriguez each with one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine and one count of aiding and abetting each other in knowingly and intentionally distributing and possessing with intent to distribute the same.

Rodriguez pleaded guilty and agreed to cooperate with the government in its case against Gonzalez-Leal at trial.

The case proceeded to trial against Gonzalez-Leal. The government first called the DEA case agent, Ganon Hicks. He testified that Gonzalez-Leal had contacted a DEA confidential source, "Armando," to discuss drug trafficking. Hicks then outlined the DEA's subsequent investigation into Gonzalez-Leal, culminating in his arrest in Nashville, Tennessee, on August 26, 2017.

The government next called Armando to the stand. Armando testified that the DEA requested his cooperation to help with a case "they were having in Tennessee." In that capacity, he had several phone conversations (recorded by the DEA) with Gonzalez-Leal to discuss drug trafficking. Eventually, the pair agreed to meet in San Antonio, Texas, to further those discussions. At that meeting, Gonzalez-Leal expressed plans to traffic methamphetamine and cocaine "all around the country." He also stated that he had "drivers" who could bring "chickens" to the United States. Armando understood Gonzalez-Leal to be explaining that he had the ability to transport heroin into the United States through other accomplices. The pair left without making specific arrangements for a drug sale, however.

Two weeks later, Gonzalez-Leal called Armando to tell him that he had "something good" and would call him back the next day with more information. Armando later asked whether Gonzalez-Leal could deliver ten kilograms of cocaine to him. That never came to pass, so Armando requested that Gonzalez-Leal deliver methamphetamine instead. Gonzalez-Leal agreed to do so in exchange for $13,000 or $14,000.

The government then called Rodriguez to testify. He explained that Gonzalez-Leal had apparently arranged for transportation of the methamphetamine through an intermediary known as

"Potro." Potro contacted Rodriguez and offered to pay him $2,000 to deliver a "present" "up north to his friend." Rodriguez agreed to transport the package and picked it up a few days later. During the exchange, Potro took a picture of Rodriguez's driver's license and asked to see a picture of Rodriguez's family; Rodriguez pulled a family photo from his Facebook account and Potro took a photo of that as well. This occurred while Potro's associate loaded the package into Rodriguez's vehicle. Rodriguez believed that it was "something illegal."

Rodriguez then headed north. Every three to four hours, he would check in with Potro, who would provide further directions for where he should travel. At Potro's direction, Rodriguez eventually made his way to Nashville, Tennessee. There, he met Gonzalez-Leal for the first time at a Red Roof Inn. Gonzalez-Leal approached Rodriguez, asked if he came on "behalf of Potro," and whether he had "my present." Gonzalez-Leal then requested that Rodriguez take him to deliver the present. Rodriguez agreed because he had not yet been paid, and he expected Gonzalez-Leal to pay him after the delivery was complete. Gonzalez-Leal also requested that Rodriguez drive him back to Texas because "he was about to receive a large amount of currency" that he could not pass through an airport. For this, he offered to pay Rodriguez another $2,000.

While Rodriguez traveled from Texas to Tennessee, Gonzalez-Leal kept Armando apprised of the situation through text-message updates on Rodriguez's progress. And once Gonzalez-Leal met with Rodriguez and confirmed that the drugs were ready for delivery, he asked Armando where they should meet. Armando directed Gonzalez-Leal to a Home Depot nearby and, at Gonzalez-Leal's direction, Rodriguez drove him to the store. There, when Gonzalez-Leal attempted to deliver the package to Armando, DEA agents arrested both defendant and Rodriguez, and searched Rodriguez's vehicle. Inside, they found a fire extinguisher that concealed over 5.25 kilograms of methamphetamine.

At the close of the government's case, Gonzalez-Leal moved for a judgment of acquittal, which the district court denied. The jury then convicted defendant of both offenses.

The Presentence Investigation Report calculated his adjusted offense level at 36, with a Criminal History Category of I, resulting in a Guidelines range of 188–235 months. Defendant objected, arguing that he was entitled to a four-level minimal-role reduction under U.S.S.G. § 3B1.2(a). At the sentencing hearing, the district court took testimony from Gonzalez-Leal and heard argument on this point but declined to grant the reduction. It then imposed a bottom-of-the-Guidelines sentence of 188 months' imprisonment. Defendant timely appealed.

II.

Gonzalez-Leal challenges the sufficiency of the evidence to sustain his convictions for both conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine. Both arguments lack merit.

A defendant claiming insufficient evidence to support a conviction "faces a high bar" on appeal. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). This is because we must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We can sustain a conviction based on circumstantial evidence alone, and the evidence need not disprove every hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). A sufficiency claim does not allow us to "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted).

A.

Count One of the indictment charged Gonzalez-Leal with conspiracy to possess with intent to distribute a certain quantity of methamphetamine. "To sustain a conviction for drug conspiracy under section 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). Defendant contends that the evidence was insufficient to establish that he joined a drug-trafficking conspiracy because "a person cannot be a co-conspirator while cooperating with the government." In other words, he says that there was no conspiracy because Armando was a confidential informant.

We disagree. "[I]t is true that a person may not form a conspiracy solely with a government agent." *United States v. Cordero*, 973 F.3d 603, 617 (6th Cir. 2020). But here the evidence allowed a rational juror to conclude that the conspiracy involved more participants than just Gonzalez-Leal and Armando. For one, a rational juror could conclude that Rodriguez joined the conspiracy by agreeing to drive Gonzalez-Leal to Home Depot to complete the drug transaction (even if he was deliberately ignorant of the exact contraband being sold). *See United States v. Patel*, 651 F. App'x 468, 471 (6th Cir. 2016). For another, a rational juror could reasonably infer that Potro participated in the conspiracy by acting as the nexus between Gonzalez-Leal and Rodriguez to allow for delivery of the methamphetamine in Nashville. *See United States v. Wheat*, 988 F.3d 299, 308 (6th Cir. 2021). Accordingly, the evidence is sufficient to uphold defendant's conviction on Count One.

B.

Count Two of the indictment charged Gonzalez-Leal with distribution and possession with intent to distribute methamphetamine. For the government to prove this charge, it had to establish

that, on or about the above dates, defendant (1) "knowingly, (2) possessed a controlled substance, (3) with intent to distribute." *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006).

Gonzalez-Leal claims that there was insufficient evidence for a reasonable juror to conclude that he possessed or intended to distribute methamphetamine on August 26, 2017. He says that his "[m]ere presence . . . in the vehicle with the drugs" is "not sufficient to convict him of possession of a control[led] substance." Maybe so. But the government is not required to prove actual possession of a controlled substance to establish that a defendant possessed with intent to distribute a controlled substance: constructive possession is sufficient. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010). And constructive possession exists "when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (citation and emphasis omitted). Here, the jury heard sufficient evidence to conclude that defendant constructively possessed the methamphetamine once he linked up with Rodriguez at the Red Roof Inn. According to Rodriguez, Gonzalez-Leal asked whether he had "my present" and when Rodriguez answered affirmatively, Gonzalez-Leal requested that Rodriguez drive him to Home Depot to complete the sale. At that time, defendant had dominion and control over the methamphetamine to finalize the sale to Armando. Accordingly, we affirm his conviction on Count Two.

III.

Gonzalez-Leal also challenges one aspect of his sentence. He contends the district court erred by declining to apply a four-level mitigating-role reduction to his sentence reserved for minimal participants in criminal activity. *See* U.S.S.G. § 3B1.2(a). Although we review the

district court's ruling for clear error, *see United States v. Randolph*, 794 F.3d 602, 616 (6th Cir. 2015), we see no error, clear or otherwise.

Section 3B1.2(a) of the Guidelines decreases a defendant's offense level by four levels "[i]f the defendant was a minimal participant in any criminal activity." U.S.S.G. § 3B1.2(a). A minimal participant in a conspiracy is a defendant "who [is] plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 cmt. n.4. This adjustment is intended to be used "infrequently." *Randolph*, 794 F.3d at 616 (citation omitted).

Here, the district court did not clearly err in declining to find that Gonzalez-Leal was a minimal participant. As the district court explained at sentencing, Gonzalez-Leal negotiated the sale to Armando, coordinated transportation with several people, traveled to Nashville to meet Rodriguez, and personally traveled with Rodriguez to ensure that the drugs were delivered to Armando; this knowledge of the scope and structure of the enterprise indicates Gonzalez-Leal played more than a minimal role. And he intended to personally benefit from the sale with a sum of cash so large he did not feel comfortable passing through an airport. Given this meaningful involvement, the district court did not clearly err when it declined to find that Gonzalez-Leal was a minimal participant under § 3B1.2.

## IV.

For these reasons, we affirm the judgment of the district court.