16-3030-cr
United States of America v. Kendrick (Janine Plaza Pierce)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2019

Argued:  August 21, 2019                    Decided: October 10, 2019

Docket No. 16-3030-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

       Appellant,

          v.

JANINE PLAZA PIERCE,

       Defendant - Appellee.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, HALL, *Circuit Judges*; KELLY[*], *Judge*.

Appeal by the Government from the August 1, 2016, order of the District

Court for the Northern District of New York (Frank P. Geraci, Jr., Chief Judge),

setting aside a jury's verdict finding Janine Plaza Pierce guilty of a narcotics

---

[1] The Clerk is requested to amend the official caption as above.

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

conspiracy. Chief Judge Geraci ruled that the verdict was inconsistent with the jury's findings on eight interrogatories.

Affirmed.

> Everardo A. Rodriguez, Asst. U.S. Atty., Rochester, NY (James P. Kennedy, Jr., U.S. Atty., Tiffany H. Lee, Asst. U.S. Atty., Rochester, NY, on the brief), for Appellant United States of America.
>
> Cheryl Meyers Buth, Meyers Buth Law Group, Orchard Park, NY, for Defendant-Appellee Janine Plaza Pierce.

JON O. NEWMAN, Circuit Judge:

This appeal by the Government concerns facially inconsistent jury verdicts in a criminal case. The United States appeals from the August 1, 2016, order of the United States District Court for the Northern District of New York, (Frank P. Geraci, Jr., Chief District Judge), setting aside a jury's verdict finding Janine Plaza Pierce[2] guilty of a conspiracy to possess with intent to distribute, and to distribute, four types of narcotics. Chief Judge Geraci ruled that the verdict was inconsistent with the jury's eight findings that it was "Not Proven" that Pierce conspired to

---

[2] Appellant's surname is rendered "Pierce," "Plaza Pierce," and "Plaza-Pierce" in the parties' papers and the transcript. We will use "Pierce," the surname in the indictment.

possess with intent to distribute each one of the four types of narcotics or conspired to distribute each one of the four types of narcotics.

Although it is unfortunate that the jury was not afforded an opportunity to reconsider its findings, we conclude that, in view of the inconsistency and the Government's unhelpful role in the proceedings, we must affirm.

## Background

The indictment charged Pierce and her co-defendants with several counts. Count 1, the only count relevant to this appeal,[3] charged Pierce and some of the defendants with conspiracy to possess with intent to distribute, and to distribute, cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. § 846. Because the trial evidence is not relevant to this appeal, we need not detail it.

In the jury charge, Chief Judge Geraci informed the jurors that they would be provided with a verdict sheet. He then explained,

> "The amount of the controlled substances involved is unrelated to the issue of whether or not the defendants are, in fact, guilty. You will note, however, that the verdict sheet requires that in the event you determine the defendants guilty of the particular conspiracy charged in Count 1, you must then determine the weight, whether the weight was for a mixture or substance

---

[3] Pierce was charged in two other counts, on which she was found not guilty.

3

containing cocaine of at least 5 kilograms, of at least 500 grams but less than 5 kilograms, or less than 500 grams."

J. App'x 1146. He then mentioned the choices of weights that the verdict sheet provided for cocaine base and heroin. The verdict sheet provided choices for weights of cocaine, cocaine base, and heroin because, in the event of a guilty verdict, the weight of a substance found to have been involved in the conspiracy charged in Count 1 could increase the applicable statutory maximum sentence under 21 U.S.C. §§ 841(b), 846, and therefore must be found beyond a reasonable doubt by a jury to effect such an increase, *see United States v. Apprendi*, 530 U.S. 466, 476 (2000).[4]

The verdict sheet, as returned by the jury, included the following:

**AS TO DEFENDANT JANINE PLAZA PIERCE:**
**COUNT 1**

Conspiracy to possess with intent to distribute, and to distribute, cocaine, cocaine base, heroin and marijuana, between in or about 1993 and on or about March 2, 2011, in violation of 21, United States Code, Section 846.

How do you find as to defendant **Janine Plaza Pierce** on Count 1?

( √ ) Guilty                    (  ) Not Guilty

If you find defendant **Janine Plaza Pierce** guilty, proceed to parts (a), (b), (c), (d), (e), (f), (g) and (h).

(a) We the jury find that the allegation that defendant **Janine Plaza Pierce** conspired to possess with intent to distribute **cocaine** is:

___ Proven                    _√_ Not Proven

If you find that part (a) is proven, then proceed to part (a)(1).

(1) We the jury find that defendant Janine Plaza Pierce conspired to possess with intent to distribute the following amount of **cocaine**:

---

[4] The verdict sheet provided no choice of weights for marijuana.

4

(mark only one)

___ 5 kilograms or more

___ 500 grams or more, but less than 5 kilograms

___ less than 500 grams

(b)  We the jury find that the allegation that defendant **Janice Plaza Pierce** conspired to distribute **cocaine** is:

      ___ Proven                          _√_ Not Proven

If you find that part (b) is proven, then proceed to part (b)(1).

(1) We the jury find that defendant **Janine Plaza Pierce** conspired to possess with intent to distribute the following amount of **cocaine**:

(mark only one)

___ 5 kilograms or more

___ 500 grams or more, but less than 5 kilograms

___ less than 500 grams

J. App'x 1206–07.

The verdict sheet continued in parts (c) through (h) with the same language as in parts (a) and (b), changing the narcotic to cocaine base in parts (c) and (d),  heroin in parts (e) and (f), and marijuana in parts (g) and (h), and providing different choices of weights for cocaine base and heroin. As they had done with parts (a) and (b), the jurors placed check marks next to "Not Proven" on each of the lines where that choice appeared in parts (c) through (h) for cocaine base, heroin, and marijuana.

The same inconsistency occurred for defendant Pablo Plaza. With respect to Count 4, which charged only Plaza with the substantive offense of "possession with intent to distribute" and "to distribute" heroin (during dates and at a location different from those in the Count 1 conspiracy of which he was found guilty), the

5

jurors placed a check mark next to "Guilty" and check marks on the lines next to "Not Proven" asking whether Plaza possessed heroin with intent to distribute and distributed heroin.[5]

After the jury foreman reported the verdicts, Chief Judge Geraci said to counsel at sidebar, "We know we have a problem with a couple of counts here." J. App'x 1246. One defense counsel asked to have the jurors polled. Chief Judge Geraci said he would do that and added, "I'm not going to discharge them . . . and we'll discuss this . . . ." *Id*. The jurors orally confirmed their verdicts. They were then told that they were not being discharged and were sent back to the jury room. Chief Judge Geraci then pointed out to counsel the facial inconsistencies in the verdicts with respect to Pierce on Count 1 and Plaza on Count 4 and invited the views of counsel.

Defense counsel asked that the jury be discharged. The prosecutor said, "I think it may be worth asking the jury about the apparent inconsistency." J. App'x 1261. When Chief Judge Geraci asked him, "What question do you propose I ask the jury to reconsider?" *id*. at 1262, the prosecutor replied, "How could they find guilty

---

[5] A somewhat similar, yet significantly different, set of verdicts was returned for defendant James Kendrick. With respect to Count 10, which charged only Kendrick with "knowing and unlawful use, carry and discharge of firearms . . . in relation to a drug trafficking crime," the jurors placed a check mark next to "Guilty" as to Count 10 and a check mark next to "Not Proven" below the line asking whether Kendrick discharged a firearm in relation to a drug trafficking crime. Apparently the jury found that Kendrick used or carried a firearm, but did not discharge one.

6

on Count 1 without having found any of the objectives were proven." *Id*. 1262–63. Chief Judge Geraci said, "I'm not sure that would be proper." *Id.* at 1263. The prosecutor later said, "[O]ur argument is their finding as to whether a finding of guilty as to the first count as to Ms. Plaza-Pierce is sufficient to support the count even though they later were not able to unanimously agree as to which of the counts she conspired as to —." *Id*. Chief Judge Geraci then said, "I can't imagine what question to ask the jury to go back and reconsider." *Id*. After the prosecutor said he did not have anything further, the jury was brought back to the courtroom and discharged. Counsel for Pierce then wrote the District Court a letter asking the Court to dismiss the Count 1 charge.

On July 29, the District Court held a hearing on Pierce's request. The prosecutor acknowledged that he had drafted the verdict sheet. Chief Judge Geraci asked him what was the purpose of drafting the question with the choices of "Proven" and "Not Proven." The prosecutor said the purpose was for sentencing, to enable the Court to enhance the maximum sentences and apply mandatory minimums. Chief Judge Geraci pointed out, "You could have just said conspiracy and then go through . . . the different weights, correct?" SPA 23.

At the end of the hearing, Chief Judge Geraci granted the motion to set aside the guilty verdict as to Pierce on Count 1. The Government timely appealed.

Discussion

18 U.S.C. § 3731 authorizes the Government to appeal from an order of a district court "dismissing an indictment . . . as to any one or more counts," and the Supreme Court has stated that "[a]lthough this provision authorizes appeal from a district court 'dismiss[al]' rather than 'acquittal,' it is now established that the form of the ruling is not dispositive of appealability[.]" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 567 n.4 (1977); *see United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991).

We review a district court's grant of a motion for a judgment of acquittal *de novo. See United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). Although *Autuori* involved a district judge's ruling as a matter of law that the evidence was insufficient to support a conviction, the same standard of review applies here on the legal issue of whether the inconsistency in the jury's verdicts required a judgment of acquittal.

"There is no counterpart in the Federal Rules of Criminal Procedure to the general authority contained in Rule 49(b) of the Federal Rules of Civil Procedure

to have a jury respond to interrogatories when returning a general verdict." *United States v. Ruggiero*, 726 F.2d 913, 925–26 (2d Cir. 1984) (Newman, J., concurring in part, and dissenting in part), (*Court's ruling abrogated without consideration of this point by Salinas v. United States*, 522 U.S. 52 (1997)). Although special interrogatories are generally disfavored in criminal cases, *see United States v. Coonan*, 839 F.2d 886, 891 (2d Cir. 1988), in some situations they are recommended, s*ee*, *e.g.*, *United States v. Ogando*, 968 F.2d 146, 148–49 (2d Cir. 1992) (interrogatories to determine whether jury finds "continuing series of violations" for purposes of continuing criminal enterprise conviction in violation of 21 U.S.C. § 848(c)). Of course, as this appeal illustrates, care must be taken in drafting interrogatories to minimize the risk of inconsistent verdicts.

In the civil context, where a verdict is rendered inconsistent by the jury's special interrogatory answers, "[i]t is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. Thus, where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir. 1988) (quotation marks and citations omitted). We will

assume that a similar "attempt to harmonize" should be made in the criminal context.

We can imagine one possible way that the "guilty" verdict and the "Not Proven" answers in the pending case might be harmonized. The jury might have thought that each pair of interrogatories asked whether it was proven or not proven that the defendant conspired to possess with intent to distribute, or conspired to distribute, *only* the one narcotic named in each pair of interrogatories for each narcotic. On that understanding, the jury could logically have answered "Not Proven" as to each narcotic after finding the defendant guilty of conspiring with respect to all four narcotics. Of course, the interrogatories did not include the word "only," and the Government has not contended that this word should be read into them. Indeed, such a reading would arguably strain "harmonization" beyond the breaking point. In any event, this jury rejected this reading by their verdict and interrogatory answers with respect to Count 4, charging defendant Plaza with possession with intent to distribute, and distribution of, only one substance, heroin. The jury found him guilty on Count 4, but placed check marks next to "Not Proven" below the lines stating that the jury found that Plaza possessed with intent to distribute heroin and that he distributed heroin. Because

these verdicts as to Plaza on Count 4 preclude interpreting the interrogatory findings, which were worded the same as to Pierce on Count 1, to include the word "only," we face the unusual situation where a verdict of guilty is inconsistent with interrogatory answers, all of which relate to the same count.

The Supreme Court has considered the issue of inconsistent jury verdicts in criminal cases in various contexts. In *Dunn v. United States*, 284 U.S. 390 (1932), the Court rejected a challenge to jury verdicts that were inconsistent as to different counts of an indictment. *See id.* at 393. Justice Holmes wrote, rather broadly, "Consistency in the verdict is not necessary." *Id.*[6] A challenge to inconsistent verdicts as to different counts was also rejected in *United States v. Powell*, 469 U.S. 57, 61–69 (1984). In *United States v. Dotterweich*, 320 U.S. 277 (1943), the Court rejected a challenge to jury verdicts that were inconsistent as to different defendants in a joint trial. *See id.* at 279. A challenge to a state trial judge's inconsistent bench trial findings as to different defendants was also rejected in *Rivera v. Harris*, 454 U.S. 339, 345–48 (1981). In *United States v. Standefer*, 447 U.S. 10 (1980), the Court rejected the application of collateral estoppel claimed to insulate a defendant convicted of aiding and abetting a principal who has been acquitted.

---

[6] This was Holmes's last Supreme Court opinion. *See Harris v. Rivera*, 454 U.S. 339, 346 n.15 (1981).

11

*See id*. at 21–25. In *Harris,* the Court echoed Holmes's broad language in *Dunn*, stating: "Inconsistency in a verdict is not a sufficient reason for setting it aside," *Harris*, 454 U.S. at 345, and reading *Dunn* and *Dotterweich* to have "stressed the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons," *id*. at 346, a quotation repeated in *Powell*, 469 U.S. at 63.

Though the language from these opinions is broad, the Court's holdings do not resolve the precise issue we face here: irreconcilably inconsistent verdicts as to the same defendant on the same count of an indictment. That issue came before a district court in the Tenth Circuit, as recounted in *United States v. Shippley*, 690 F.3d 1192 (10th Cir. 2012). Identically to our pending appeal, a jury found a defendant guilty of a count charging a conspiracy to distribute three narcotics and also answered "no" to interrogatories asking whether the defendant conspired to distribute each narcotic listed in that count. *See id*. at 1193. The district judge pointed out the inconsistency to the jury and gave them three choices: reconsider the answer to the guilty verdict, reconsider the answers to the interrogatories, or "stand on its existing verdict." *Id*. at 1193–94. The judge sent the jury back for further deliberations. Soon after, the jury returned with a verdict of guilty and a "yes" answer to the interrogatory asking if the defendant had conspired to

distribute 500 grams or more of cocaine, one of the three narcotics listed in the conspiracy count. *See id*. at 1194.

Had the District Judge in Pierce's case employed the procedure used by the trial judge in *Shippley*, our pending issue might never have arisen.[7] However, when asked for his views, the prosecutor did not suggest that the jury, which had not then been discharged, be invited to resume deliberations. Instead he suggested that the jurors be asked, "How could they find guilty on Count 1 without having found any of the objectives were proven." J. App'x 1262–63. Chief Judge Geraci sensibly replied, "I'm not sure that would be proper." *Id.* at 1263. As he obviously understood, "Courts have always resisted inquiring into a jury's thought processes." *Powell*, 469 U.S. at 67; *see also* Fed. R. Evid. 606(b) (jurors not competent to testify concerning jury deliberations, with exceptions not here relevant).

Chief Judge Geraci was also correct in pointing out to the prosecutor that inclusion of the interrogatories asking whether the jury found the conspiracy

---

[7] In making this observation, we express no view on whether renewed jury deliberations resulting in elimination of the inconsistency by changing at least one "Not Proven" answer to "Proven" would have been subject to challenge on double jeopardy grounds. In *Shippley*, the defendant-appellant did not raise this concern, and the Tenth Circuit did not consider it. *See* 690 F.3d at 1194, 1196.

allegations as to each narcotic proven or not proven was not necessary. As he noted, the interrogatories could simply have asked about the different weights.

Continuing our account of the *Shippley* case, we note that the defendant's appeal there challenged the jury's reconsideration of its inconsistency. Although not raising a double jeopardy argument, the defendant contended that *Powell* and *Dotterweich* required the trial judge to enter a verdict of acquittal. *See Shippley*, 690 F.3d at 1194. Then-judge Gorsuch rejected that claim, noting that those decisions concerned inconsistencies between different counts and different defendants. *See id.* at 1195. He then recognized that Shippley's case (like ours) presented a more significant inconsistency:

> [I]t wasn't just logically incongruous to enter the jury's verdict[s], it was metaphysically impossible. . . . To enter an acquittal, the district court would have needed to disregard the fact that the jury expressly found Mr. Shippley guilty. To enter a guilty verdict, the court would have needed to overlook the special verdict findings that Mr. Shippley did not conspire to distribute any of the drugs at issue in the case. And nothing in *Powell* or *Dotterweich* speaks either explicitly or implicitly about what a court's to do in these circumstances, let alone suggests the district court committed an error of constitutional magnitude (or otherwise) in proceeding as it did in this case.

*Id.*

With the inconsistency eliminated by the jury's reconsideration (and no double jeopardy claim raised on appeal), the Tenth Circuit affirmed.

14

The Sixth Circuit encountered a similar situation in *United States v. Randolph*, 794 F.3d 602 (6th Cir. 2012). As in our pending case and *Shippley*, a jury found a defendant guilty of a conspiracy involving three narcotics. The verdict form gave the jury a choice of quantities for each narcotic, including the choice of "None."[8] The jury checked "None" for each narcotic. *See id*. at 607. In a corrected charge, the trial judge told the jury, "If you unanimously find that a particular controlled substance was not involved in the offense, mark none on the appropriate special verdict form." *Id*. The Sixth Circuit concluded that "[b]ecause the jury found that none of the charged drugs were 'involved in' the conspiracy, it follows that [the defendant] cannot be guilty of the charged conspiracy." *Id*. at 612. The Court reversed the conviction on the conspiracy count and ordered a judgment of acquittal.[9]

---

[8] A wording that might have avoided the risk of inconsistency would have asked the jury to determine the amounts of each narcotic only if the jurors unanimously concluded that the evidence provided a basis for determining such amounts. An inability to determine the amount as to any narcotic would not have resulted in a failure to find an element of the conspiracy offense. *See United States v. Person*, 745 F. App'x 380, 385 (2d Cir. 2018) ("[D]rug type and quantity are not an element of the charged conspiracy offense."); *United States v. Daniels*, 723 F.3d 562, 572 (5th Cir. 2013) ("[F]ailure to prove drug quantity or type does not undermine a defendant's conviction [for narcotics conspiracy]").

[9] The Sixth Circuit also expressed the view that "[t]o the extent that dicta in *Shippley* suggest[] that the appropriate remedy in this situation is a remand for a new trial, we disagree." 794 F.3d at 612. The Sixth Circuit believed that a retrial would subject the defendant to double jeopardy. *See id*. The Sixth Circuit did not express a view as to the propriety or constitutional validity of having the same jury reconsider its verdicts before being discharged.

In the pending appeal, the jury's "Not Proven" answers to the interrogatories asking whether Pierce conspired as to each narcotic involved in the conspiracy count are similar to the "None" answers in *Randolph*.[10] And because the jury in our case was not asked to reconsider before being discharged, as occurred in *Shippley*, we have no occasion to consider whether that procedure would have encountered a valid double jeopardy objection.

We conclude that the verdicts in Pierce's case are, in the words of then-Judge Gorsuch in *Shippley*, "metaphysically impossible," and we agree with the Sixth Circuit in *Randoph* that the appropriate remedy for the inconsistency (where the jury was not given the opportunity to reconsider) was to set aside the guilty verdict, as

---

[10] Disputing the starkness of the inconsistency in the verdicts in the pending appeal, the Government, using a "*compare with*" citation signal, calls our attention to the District Court's decision in *United States v. Person*, No. 15-CR-466, 2017 WL 2455072 (E.D.N.Y. June 6, 2017), *aff'd*, 745 F. App'x 380 (2d Cir. 2018). *See* Br. for Appellant at 18–19. In *Person*, the District Court upheld a conviction for a narcotics conspiracy despite the jury's answers of "No" to questions asking: "Did the government prove that the defendant was *responsible for* a substance containing" each of the narcotics listed in the conspiracy count. *See Person*, 745 F. App'x at 384 (emphasis added). After the briefs were filed in the pending appeal, we affirmed *Person* in a non-precedential summary order. Although the *Person* interrogatory is similar to the interrogatory in the pending appeal, a negative answer to whether the defendant in *Person* was "responsible for" each narcotic did not create the irreconcilable inconsistency arising from negative answers to the questions asking whether Pierce conspired to possess and conspired to distribute each narcotic—the exact language of the conspiracy count. Moreover, our summary order pointed out that the District Court "never defined for the jury what it meant for Person to be 'responsible for' drugs such that the special interrogatories should be answered in the affirmative." *Id*. at 384–85.

Chief Judge Geraci did, especially in view of the Government's unhelpful role in the proceedings.

Conclusion

The judgment of the District Court is affirmed.