# United States Court of Appeals
## For the First Circuit

No. 18-2197

UNITED STATES OF AMERICA,

Appellee,

v.

REGINALD MCBRIDE, a/k/a Kweasia McBride, a/k/a Reggie McBride,
a/k/a Reginald Washington, a/k/a Benjamin McBride, a/k/a Manney
McBride, a/k/a Anthony Walker, a/k/a Ben McBride, a/k/a John
Doe, a/k/a Sunny,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Torruella, Lynch, and Barron,
Circuit Judges.

Elizabeth A. Latif and Law Offices of Elizabeth Latif, PLLC
on brief for appellant.
Benjamin M. Block, Assistant United States Attorney, and
Halsey B. Frank, United States Attorney, on brief for appellee.

June 11, 2020

**LYNCH**, **Circuit Judge**.  After a three-day trial, a jury convicted Reginald McBride of (1) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); and (3) carrying and using a firearm during and in relation to, and possessing the firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  In the course of determining McBride's guilt on Count Three, the jury was asked one special interrogatory and determined that the government had not proven that the firearm was "discharged."

McBride challenges his conviction on Count Three on two grounds.  He argues that the indictment was constructively amended in violation of the Fifth Amendment's Grand Jury Clause because of the admission of evidence, the government's closing argument, and the jury instructions.  He further argues that the jury's verdict on Count Three and the special interrogatory answer were irreconcilably inconsistent.  We affirm.

I.

McBride only challenges his conviction on Count Three. We recount the relevant facts in the light most favorable to the verdict.  United States v. Leoner-Aguirre, 939 F.3d 310, 313 (1st Cir. 2019).[1]

---

[1]    As to Counts One and Two, McBride contested at trial that he had previously been convicted of a felony and that the

A.     Facts

On June 26, 2016, Samantha Tupper, a friend of McBride, drove a white Ford Taurus to where McBride had been staying with a friend in Augusta, Maine.  McBride testified that Tupper had called him and said she needed to talk to him about something.  McBride packed up his belongings and when Tupper arrived, he put his bags into the trunk of the car.  The two drove around Augusta and Tupper told McBride that some other individuals had informed her that she owed them money.

McBride further testified that he and Tupper drove to a convenience store and picked up two females, who sat in the backseat.  One of the women began to physically attack Tupper while Tupper was driving and demanded that Tupper pay her the money that she owed.  Tupper stopped the car at the Walmart in Augusta and continued arguing with the woman.  At various points during the dispute, Tupper, McBride, and both female passengers got out of the vehicle in the Walmart parking lot.

Another man approached the group in a silver Volkswagen and got out of the vehicle.  McBride testified that the other man pulled out a gun.  McBride further testified that he drew the

---

substance found in his possession was heroin.  He does not challenge on appeal that he had previously been convicted of possession of a controlled drug, forging a public record, distribution of cocaine, and criminal possession of a weapon, nor does he challenge that the substance he possessed was heroin.

weapon holstered on his hip and fired it at the man.  About five shots were exchanged between McBride and the other man.

McBride removed the magazine from his gun, threw both to the ground, and began physically fighting the other man.  Two Walmart patrons approached McBride and the other man and broke up the fight.  McBride and Tupper got into the white Ford Taurus and drove away.  The other man and the woman who had fought with Tupper stayed in the parking lot and waited for the police.  One of the individuals who broke up the fight saw a firearm and magazine "laying on the ground next to each other."  He kicked them away from each other and awaited the arrival of law enforcement.

An Augusta Police Department officer responded to the shooting at the Walmart.  He recovered the firearm that was on the ground of the parking lot.  It was a Kel-Tec .9-millimeter pistol. He also found the pistol's magazine "7 to 10 feet away." Additional officers arrived within a few minutes.  They recovered bullet casings from the ground of the Walmart parking lot.  An officer observed a bullet hole in the door of the silver Volkswagen.

Another Walmart patron observed the altercation and filmed McBride getting into the passenger seat of the white Ford Taurus before Tupper drove it away from Walmart.  The patron followed the Ford Taurus, recorded its license plate number, and gave this information to law enforcement.

- 4 -

Law enforcement matched the plate number to an address in Augusta on Mayflower Road. An officer from the Hallowell Police Department drove to the address. The officer found the white Ford Taurus parked in the driveway with Tupper and McBride in the process of getting out of the car. The officer ordered both Tupper and McBride to put their hands up. Tupper obeyed, but McBride failed to follow the officer's instructions, and the officer called for backup. Two more officers arrived, at which point McBride complied, and the officers took McBride into custody.

Officers searched McBride and found a wallet, brass knuckles, money, several empty baggies, and a baggie containing about forty grams of heroin. McBride had an empty gun holster attached to his waist. Officers also observed bullet holes in the passenger side of the Ford Taurus.

On July 6, 2016, officers searched the Ford Taurus at the Augusta Police Department. In the trunk, they found a .22 caliber Cobra handgun, a Jennings .32 caliber pistol, a holster, four digital scales, a gun scope, ammunition, a speed loader, and a playing card with the name "Sunny" written on it.[2] Under the front passenger seat, officers found a .22 caliber revolver.

---

[2]    McBride also went by the name Sunny.

B.    Procedural History

        On November 8, 2017, a federal grand jury returned a second superseding indictment charging McBride with three counts. Count One charged that McBride "knowingly possessed in and affecting interstate commerce a Kel-Tec, CNC Industries Inc., model PF-9, 9 mm pistol, with serial number SDT02" and that he "had previously been convicted of a crime . . . punishable by imprisonment for a term of more than one year."  Count Two charged that McBride "knowingly and intentionally possessed with intent to distribute . . . a mixture or substance containing heroin."  Count Three charged that McBride "knowingly carried and used a firearm, namely a Kel-Tec, CNC Industries Inc., model PF-9, 9 mm pistol, with serial number SDT02, during and in relation to a drug trafficking crime . . . and possessed the firearm in furtherance of such drug trafficking crime."  The indictment further stated that "the drug trafficking offense is the offense as alleged in Count Two of this Indictment."  The indictment also charged that "[t]he defendant discharged the Kel-Tec, CNC Industries Inc., model PF-9, 9 mm pistol, with serial number SDT02."

        McBride's trial began on March 9, 2018.  On March 12, 2018, the government moved to admit the Kel-Tec pistol as well as the three other firearms recovered from the Ford Taurus.  All four firearms were admitted without objection by McBride.

On March 13, 2018, the government offered testimony from forensic analysts about the fingerprint and DNA analyses performed on all four firearms. During the examination of a fingerprint analyst, defense counsel objected:

> I appreciate that the government has introduced evidence of multiple firearms. It seemed relevant because it was essentially obtained from things that could be attributed to Mr. McBride. They've only charged possession relative to the Kel-Tec 9 millimeter and the charge in Count 3 as relative to that firearm, as well. Connecting through forensic evidence the defendant to a different firearm I think is problematic . . . .

The district court overruled the objection, stating, "I think the fact that he had multiple guns is relevant to Count 3." Defense counsel objected again on the same grounds later in the testimony, and the district court overruled the objection.

Later during the examination of a DNA analyst, defense counsel objected "to testimony . . . from this witness regarding analysis of firearms other than those expressly charged in the indictment." The district court overruled the objection. After defense counsel objected again later in the testimony of the DNA analyst, the district court stated:

> I realize you're protecting the record on this, but it's very, very clear to me that the other guns are part of the circumstances that I'll instruct the jury that they can consider on Count 3 . . . . [I]t seems to me very clear that the presence of other guns is relevant to the question of in furtherance.

The court granted defense counsel a continuing objection and stated "[y]ou are fully protected under the record on this."

In delivering the jury instructions, the district court stated that "[f]or purposes of Count 3, you may consider all the surrounding circumstances." This could include factors "like whether Mr. McBride's possession of the firearm was legal; the type of weapon; whether the gun was loaded; whether there's any evidence . . . that the weapon was stolen; how accessible the firearm was; and the time and circumstances under which the firearm was found." The district court further stated:

> In order for you to find Mr. McBride guilty of [Count Three], the government must prove the following elements beyond a reasonable doubt: First, that Mr. McBride committed the crime of possession of heroin with the intent to distribute described in Count 2; and, second, that Mr. McBride knowingly used or carried a firearm during and in relation to the commission of that crime.

(Emphasis added.) At the close of the instructions, the court reminded the jury to "[c]onsider only the crimes charged. . . . Mr. McBride is not on trial for any act, conduct, or offense not alleged in the second superseding indictment." Defense counsel did not object to the instructions.

The government began closing arguments by stating that on June 26, 2016,

> McBride[] got in the passenger seat of a Ford Taurus and traveled to the Walmart in Augusta.

- 8 -

> He was armed with a Kel-Tec 9 millimeter pistol. . . . In his pocket, he had over 40 grams of heroin. While he was there, he discharged that firearm, threw it on the ground, and he left the scene.

The government stated that it was "based on these acts" that McBride was charged with the three counts. Then the government summarized the evidence found in the Ford Taurus, including the three firearms not named in the indictment. The government again referenced these three firearms when discussing the evidence supporting Count Two, stating that the jury should consider these firearms in assessing whether McBride possessed with intent to distribute heroin. The government turned to Count Three and did not reference the three firearms found in the Ford Taurus. Instead, it only referred to the Kel-Tec pistol.

Defense counsel's closing argument focused on Count Three and argued that McBride's presence at the shooting was only a coincidence. In rebuttal, the government stated, "[i]t is no coincidence that Mr. McBride had these 40 grams of heroin in his pocket; it's no coincidence that he had that Kel-Tec 9 millimeter on his hip; and it's no coincidence that he had these two other firearms in his trunk in his property." Further, the government stated, "[d]efense counsel says there's no evidence for Count 3, no evidence. Well, that disregards, again, the drugs, the guns."

The district court submitted the case to the jury. The verdict form included three sections, one for each count charged

in the indictment.  The form explicitly referred to the charges as laid out in the second superseding indictment.  Under Count Three, the form included two spaces for the jury to fill out.  First, it asked whether McBride was "not guilty" or "guilty beyond a reasonable doubt" on Count Three.  It also included a special interrogatory that asked, "[d]o you unanimously find that the government proved beyond a reasonable doubt that the firearm was discharged?"

On March 14, 2018, the jury convicted McBride of all three counts.  In response to the "discharge" special interrogatory, the jury answered "[n]o."  On November 27, 2018, the district court sentenced McBride to 88 months and 201 days' imprisonment on Counts One and Two to be served concurrently and 60 months' imprisonment on Count Three, to be served consecutively. McBride timely appealed.

## II.

A.   There Was No Constructive Amendment of the Indictment

McBride argues that the government constructively amended the second superseding indictment in violation of the Fifth Amendment's Grand Jury Clause.  He asserts that this constructive amendment occurred because of the district court's admission of the three uncharged firearms found in the Ford Taurus, the government's reference to these firearms in closing arguments, and the district court's failure to give "any . . . limiting

instruction" that the firearms could not be used in considering Count Three.

The parties dispute whether McBride preserved this challenge. "We review a preserved claim of constructive amendment de novo." United States v. Hernández, 490 F.3d 81, 83 (1st Cir. 2007) (emphasis omitted). An unpreserved claim is reviewed for plain error. United States v. Rosario-Pérez, 957 F.3d 277, 289 (1st Cir. 2020). McBride did not object to the introduction of the three firearms, failed to object to the jury instructions given, and "never raised the issue of a constructive amendment before the district court." Nevertheless, he argues that his argument is preserved under the Supreme Court's recent decision in Holguin-Hernandez v. United States, 140 S. Ct. 762 (2020), because of the statements made by defense counsel when objecting to the fingerprint and DNA evidence. In Holguin-Hernandez, the Court explained that "[b]y 'informing the court' of the 'action' he 'wishes the court to take,' a party ordinarily brings to the court's attention his objection to a contrary decision" and thereby preserves the claim. Id. at 766 (citation omitted) (quoting Fed. R. Civ. P. 51(b)). We need not resolve this issue because even assuming arguendo that McBride preserved his constructive amendment argument, it fails.

"[A] constructive amendment occurs when the charging terms of an indictment are altered, either literally or in effect,

- 11 -

by prosecution or court after the grand jury has last passed upon them." United States v. Valdés-Ayala, 900 F.3d 20, 36 (1st Cir. 2018) (alteration in original) (quoting United States v. Taylor, 848 F.3d 476, 495 (1st Cir. 2017)). "The rule against constructive amendments exists to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him." Id. (quoting Taylor, 848 F.3d at 495) (internal quotation marks omitted). Such an amendment may occur through the "admission of evidence of an offense not charged by the grand jury." United States v. Fornia-Castillo, 408 F.3d 52, 66 (1st Cir. 2005) (quoting United States v. Dunn, 758 F.2d 30, 35 (1st Cir. 1985)).

Here, the introduction of the three firearms found in the Ford Taurus did not alter the terms of the indictment. The evidence of these guns was properly admitted because they tended to prove both Counts Two and Three. See United States v. Muñoz-Franco, 487 F.3d 25, 65 (1st Cir. 2007) (concluding no constructive amendment occurred from admission of evidence because the "evidence was directly relevant to the charges . . . and was not outside the scope of the original indictment").

"[T]he nearby presence of an illegal gun" can support the inference that a defendant intended to distribute a controlled

- 12 -

substance.  United States v. Bobadilla-Pagán, 747 F.3d 26, 34 (1st Cir. 2014); see United States v. Fernández-Santos, 856 F.3d 10, 19 (1st Cir. 2017) (stating that "the presence of firearms" is a relevant factor in "determining whether a defendant had an intent to distribute" (quoting United States v. Cortés-Cabán, 691 F.3d 1, 36 (1st Cir. 2012))).  Count Two charged possession with intent to distribute heroin, and Count Three charged that McBride carried and used the Kel-Tec pistol during and in relation to, and possessed it in furtherance of, that drug trafficking offense.  To prove both counts, the government needed to put on evidence demonstrating McBride's intent to distribute.  The three firearms in the Ford Taurus tended to show that McBride had the requisite intent.  As such, the evidence of the three firearms was within the scope of the original indictment and did not constitute a constructive amendment.  See United States v. Lnu, 544 F.3d 361, 369 (1st Cir. 2008) (concluding there was no constructive amendment because challenged evidence and closing statements "helped to establish that [the defendant] had the requisite mens rea to be convicted of the crime charged"); United States v. Fisher, 3 F.3d 456, 463 (1st Cir. 1993) (concluding there was no constructive amendment because "[t]he evidence admitted . . . pertained

directly to [the charges for which the defendant was convicted,] and to no other[] charges").[3]

As to the government's closing arguments, there was also no constructive amendment of the indictment. As said, the three firearms tended to prove Counts Two and Three. The government permissibly summarized this evidence in closing and stated that it supported Count Two. See Valdés-Ayala, 900 F.3d at 37. Further, the government made clear from the beginning of the closing argument that the Kel-Tec pistol was the firearm charged in Count Three. In discussing the evidence supporting Count Three, the government only referenced the Kel-Tec pistol. In rebutting defense counsel's argument that McBride was only caught with a

---

[3] McBride relies heavily on the Seventh Circuit case United States v. Leichtnam, 948 F.2d 370 (7th Cir. 1991). In Leichtnam, the indictment charged that the defendant "did knowingly use and carry a firearm, to wit: a Mossberg rifle, Model 250CA with no serial number, during and in relation to . . . drug trafficking." Id. at 374 (alteration in original). At trial, the government introduced two other guns and the jury "received an instruction, tendered by the government, that it could convict on count two if convinced that [the defendant] had used 'a firearm' -- in effect, any one of the three." Id. at 379. The Seventh Circuit stated that this constituted an amendment of the indictment. Id. at 380-81. This circuit has not adopted such a rule and further, that case is factually different. In Leichtnam, the two uncharged guns were found elsewhere in the defendant's house while the charged rifle was found in a closet with narcotics and drug paraphernalia. Id. at 380 n.2. The Assistant United States Attorney who tried the case himself stated that he "felt that [the two uncharged guns] were sufficiently attenuated from the drug evidence that it would be inappropriate to charge [Leichtnam] with those two guns." Id. at 380. But here, the three uncharged guns were all found inside the same vehicle as drug paraphernalia and the heroin in McBride's pocket.

firearm and heroin by coincidence, the government emphasized the circumstances tending to show that this was not a coincidence -- the firearms present in the car tended to show that McBride was engaged in drug trafficking.  These comments did not alter the terms of the indictment.

Finally, the jury instructions did not constructively amend the indictment.  The district court's jury "instructions must be evaluated not in isolation but in the context of the entire charge."  Jones v. United States, 527 U.S. 373, 391 (1999).  It is true, as McBride points out, that the district court did not expressly instruct the jury that it could only convict McBride of Count Three if it determined that he "carried and used" the Kel-Tec pistol specifically, not the three other firearms.  But not only did McBride never request such an instruction, the district court did tell the jury to only consider the crimes charged in the second superseding indictment, which expressly stated that Count Three was based on the Kel-Tec pistol.  Further, the verdict form explicitly referenced the second superseding indictment.  Taken in context and "[i]n light of our long-standing presumption that jurors follow instructions," United States v. Spencer, 873 F.3d 1, 16 (1st Cir. 2017), the instruction's omission of an explicit

reference to the Kel-Tec pistol did not constructively amend the indictment.[4]

B.   The Jury Verdict on Count Three and the Special Interrogatory Answer Were Not Inconsistent

McBride further argues that his conviction on Count Three should be vacated because the verdict and the special interrogatory answer were "irreconcilably inconsistent." McBride did not raise this issue at the district court but even assuming favorably to him that it is preserved, the argument fails.

Generally, "inconsistent findings are 'not grounds for reversing a conviction.'" United States v. Monteiro, 871 F.3d 99, 109 (1st Cir. 2017) (quoting United States v. Vizcarrondo-Casanova, 763 F.3d 89, 104 (1st Cir. 2014)). "Inconsistent verdicts 'may be the result of [jurors'] lenity, coupled with the Government's inability to invoke review'" and as a result, "the best course to take is simply to insulate jury verdicts from review on this ground." United States v. Rios-Ortiz, 708 F.3d 310, 317

---

[4]   The government also argues that other circuits have stated that if information included in an indictment is not an essential element of the offense, it does not cause a constructive amendment for such information not to be proven at trial exactly as stated in the indictment. See United States v. Redd, 161 F.3d 793, 796 (4th Cir. 1998); United States v. McIntosh, 23 F.3d 1454, 1458 (8th Cir. 1994); United States v. Robison, 904 F.2d 365, 369 (6th Cir. 1990); see also United States v. Garcia-Paz, 282 F.3d 1212, 1215-16 (9th Cir. 2002). There is no need for us to address the issue.

(1st Cir. 2013) (alteration in original) (quoting United States v. Powell, 469 U.S. 57, 66, 69 (1984)).

There was no irreconcilable inconsistency. The jury could have found that McBride carried and used the Kel-Tec pistol during and in relation to, and possessed it in furtherance of, drug trafficking but that he did not discharge it. Discharge of the firearm is not required for a complete § 924(c) offense. See Dean v. United States, 556 U.S. 568, 571 (2009) ("The principal paragraph [of § 924(c)] defines a complete offense and the subsections 'explain how defendants are to be sentenced.'" (quoting Harris v. United States, 536 U.S. 545, 552 (2002))). It is possible to give effect to both the "guilty" verdict and the answer to the special interrogatory.

McBride's reliance on United States v. Pierce, 940 F.3d 817 (2d Cir. 2019), is misplaced. There, the Second Circuit affirmed the district court's judgment of acquittal due to irreconcilable inconsistency. Id. at 824. The defendant was charged with conspiracy to possess with intent to distribute and conspiracy to distribute cocaine, cocaine base, heroin, and marijuana. Id. at 818. The jury found the defendant guilty of this charge. Id. at 819. The verdict form also asked two special interrogatories as to the weight of each substance. Id. On each interrogatory, the jury answered that the government had "not proven" that the defendant "conspired to possess with intent to

- 17 -

distribute" or "conspired to distribute" the specific substance. Id. The Second Circuit concluded that the guilty verdict and the "not proven" interrogatory answers were "metaphysically impossible" to reconcile. Id. at 824.

There is no inconsistency within Count Three here at all. Answering "[n]o" to the special interrogatory did not negate the "guilty" verdict on Count Three because the government did not need to prove that McBride discharged the Kel-Tec pistol to convict him of Count Three. The guilty verdict is entirely consistent with the special interrogatory answer.[5]

Affirmed.

---

[5] McBride also argues that the jury's verdict is inconsistent because "the jury could not have found Mr. McBride guilty of possessing the Kel-Tec 9, but not discharging it," as he testified at trial that he possessed a Kel-Tec gun that he discharged. But, a jury has an "unreviewable power . . . to return a verdict of not guilty for impermissible reasons," Harris v. Rivera, 454 U.S. 339, 346 (1981), so we may not invalidate the jury's finding on Count Three based on its answer to the interrogatory.